**UNITED STATES of America,**
**Plaintiff,**

v.

**Dustin Lee HONKEN, Defendant.**

**No. CR 01–3047–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

July 21, 2003.

---

**1100**

Patrick J. Reinert, Charles J. Williams, U.S. Attorney's Office. Cedar Rapids, IA, for plaintiff.

Alfredo G. Parrish, Parrish Kruidenier Moss Dunn Montgomery Boles & Gribble, LLP, Charles Rogers, Kansas City, MO, Leon F. Spies, Mellon & Spies, Iowa City, IA, for defendant.

---

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS COUNTS 8 THROUGH 17 ON GROUNDS OF FORMER JEOPARDY**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................1101
 A. *The Prosecutions* .............................................1101
 B. *Honken's Motion To Dismiss* .................................1103
 1. *Honken's arguments for dismissal* .......................1103
 2. *The government's response* ..............................1104

II. *LEGAL ANALYSIS* ...............................................1104
 A. *Constitutional Prohibition On Double Jeopardy* ...............1104
 1. *General principles* .....................................1104
 2. *Single prosecution for multiple offenses* ...............1105
 3. *Successive prosecutions* ................................1106
 a. *Termination of prior jeopardy* .....................1107
 b. *Double jeopardy and "lesser-included offenses"* ....1107
 c. *The applicable analysis* ...........................1107
 i. *The "same analysis."* ..........................1107
 ii. *Specific authorization of cumulative punishment* ...1108
 B. *Double Jeopardy In Honken's Cases* ...........................1110

1. *Authorization of cumulative punishment* .............................1110
2. *Intent to define separate offenses* .................................1112
3. *The same or separate offenses* ....................................1112
 a. *Conspiracy murder* ........................................1112
 i. *Analysis under Blockburger*...............................1113
 ii. *Analysis under Garrett* ................................1115
 b. *CCE murder* .........................................:.1116
 i. *Analysis under Blockburger*.............................1116
 ii. *Analysis under Garrett* ................................1117

*III.* *CONCLUSION* ...........................................1118

No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb.

U.S. CONST., amend. V, cl. 2.

The defendant in this criminal prosecution asserts that his prior conviction on a drug conspiracy charge, in violation of 21 U.S.C. § 846, bars, on "former jeopardy" grounds, his prosecution on the present charges of murder while engaging in a drug-trafficking conspiracy ("conspiracy murder"), in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2, and murder while engaging in or working in furtherance of a continuing criminal enterprise ("CCE murder"), also in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. The government, however, contends that Congress has expressly authorized successive prosecutions and cumulative punishments for drug conspiracy and conspiracy murder or CCE murder. The court must decide whether prosecution of the defendant on the present murder charges violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

## I. INTRODUCTION

### A. The Prosecutions

On April 11, 1996, Dustin Lee Honken and a co-defendant, Timothy Cutkomp, were indicted in a previous case ("the 1996 case") on three drug-trafficking charges including the following conspiracy charge:

Between about 1993 and February 7, 1996, in the Northern District of Iowa and elsewhere, DUSTIN LEE HONKEN and TIMOTHY CUTKOMP, did knowingly and unlawfully combine, conspire, confederate and agree with persons known and unknown to the Grand Jury to commit the following offenses against the United States:

1. Distribution of 1000 grams or more [of] a mixture or substance containing a detectable amount of methamphetamine and 100 grams or more of pure methamphetamine, a schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A);

2. To knowingly manufacture 1000 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 100 grams or more of pure methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A);

3. To knowingly attempt to manufacture 1000 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 100 grams or more of pure methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A);

This in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A).

Indictment in Case No. CR 96–3004–MWB (N.D.Iowa).[1] A superseding indictment filed later in the 1996 case restated this conspiracy charge and Honken eventually pleaded guilty to it in July 1997. *See, e.g., United States v. Honken,* 184 F.3d 961, 963 (8th Cir.), *cert. denied,* 528 U.S. 1056, 120 S.Ct. 602, 145 L.Ed.2d 500 (1999).

The present prosecution began with the filing of a seventeen-count indictment against Honken on August 30, 2001, which brought a variety of charges arising from Honken's alleged murder and solicitation of murder of witnesses to his alleged drug-trafficking and other criminal activity. Among the charges in the original indictment in this case are "conspiracy murder" charges in Counts 8 through 12 and "CCE murder" charges in Counts 13 through 17. On August 23, 2003, a Superseding Indictment was handed down in this case, which amended those "conspiracy murder" and "CCE murder" charges. It is these charges that are the target of Honken's present motion to dismiss.

As they presently stand, Counts 8 through 12 charge "conspiracy murder" of Gregory Nicholson, Lori Duncan (Nicholson's girlfriend), Amber Duncan and Kandi Duncan (Lori Duncan's daughters, age 6 and 10, respectively), and Terry DeGeus, respectively, as follows:

> On or about July 25, 1993 [November 5, 1993, as to DeGeus], in the Northern District of Iowa, DUSTIN LEE HONKEN, while knowingly engaging in an offense punishable under Title 21, United States Code, Sections 846 and 841(b)(1)(A), that is between 1992 and 1998 DUSTIN LEE HONKEN did knowingly and unlawfully conspired [sic]

to: 1) manufacture 100 grams or more of pure methamphetamine and 1000 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 2) distribute 100 grams or more of pure methamphetamine and 1000 grams or more of a mixture or substance containing a detectable amount of methamphetamine, intentionally killed and counseled, commanded, induced, procured, and caused and aided and abetted the intentional killing of [the named individual], and such killing resulted.

> All in violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.

Superseding Indictment, Counts 8 through 12.

Counts 13 through 17 of the Superseding Indictment charge "CCE murder" of the same five individuals, respectively, as follows:

> On or about July 25, 1993 [November 5, 1993, as to DeGeus], in the Northern District of Iowa, DUSTIN LEE HONKEN, while engaging in and working in furtherance of a continuing criminal enterprise in violation of Title 21, United States Code, Section 848(c), intentionally killed and counseled, commanded, induced, procured, and caused and aided and abetted the intentional killing of [the named individual], and such killing resulted.

> The continuing criminal enterprise DUSTIN LEE HONKEN engaged in and worked in furtherance of was undertaken by DUSTIN LEE HONKEN in concert with five or more other persons

---

1. Counts 2 and 3 of the original Indictment in the 1996 case charged Honken with possessing and aiding and abetting the possession of listed chemicals, in violation of 21 U.S.C. § 841(d) and 18 U.S.C. § 2, and possession and aiding and abetting the possession of drug paraphernalia intending to use such paraphernalia to manufacture and attempt to manufacture methamphetamine and listed chemicals, in violation of 21 U.S.C. § 843(a)(6) and 18 U.S.C. § 2, respectively.

including, but not limited to, Timothy Cutkomp, Gregory Nicholson, Terry De-Geus, Angela Jane Johnson, and Jeffery Honken. In the organization, DUSTIN LEE HONKEN occupied a position of organizer, supervisor or other position of management. The criminal enterprise involved the commission of a continuing series of narcotics violations under Title 21, United States Code, Section 801 *et. [sic] seq.* occurring between 1992 and 2000, specifically:

[18 numbered paragraphs omitted].

From this continuing criminal enterprise, DUSTIN HONKEN and others derived substantial income and resources.

All in violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2. Superseding Indictment, Counts 13 through 17.

This matter is presently set for trial beginning on March 1, 2004. However, Honken contends that this prosecution cannot go forward on Counts 8 through 17 without violating his rights under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

### B. Honken's Motion To Dismiss

On June 6, 2003, Honken moved to dismiss Counts 8 through 17 of the Superseding Indictment in this case on the grounds of "former jeopardy." After an extension of time to do so, the government resisted Honken's motion to dismiss on July 8, 2003. Neither party requested oral arguments on the motion and the court has not found oral arguments to be necessary to its disposition of the motion. Therefore, Honken's motion to dismiss is now fully submitted on the parties' written submissions.

#### 1. Honken's arguments for dismissal

Honken's "former jeopardy" argument is relatively straight forward. He argues,

first, that the conspiracy of which he was convicted in the 1996 case is the same conspiracy alleged in the conspiracy murder and CCE murder counts of the present Superseding Indictment. Somewhat more specifically, applying the five factors of the "totality of the circumstances" test, he argues that the two conspiracies allegedly involved the same, or at least overlapping, periods of time; both involved the distribution and manufacture of 100 grams or more of pure methamphetamine and 1,000 grams or more of a mixture or substance containing a detectable amount of methamphetamine; both involved the same individuals (although no co-conspirators, besides Cutkomp, are identified in the indictment in the 1996 case); the prior conspiracy involved many of the same acts identified in the present Superseding Indictment as part of the CCE and Honken's sentence in the 1996 case was based, in part, on the court's finding that Honken had obstructed justice by causing the disappearance of certain witnesses; and the bulk of the events involved in both conspiracies allegedly occurred in the Northern District of Iowa.

Because the charges in the prior and present cases involve the same conspiracy, Honken argues that the drug conspiracy charged in the 1996 case is a "lesser-included offense" or "essential element" of the conspiracy murder and CCE murder charges involved in this case. Therefore, Honken argues that he is now being prosecuted for the "same" offense to which he has previously pleaded guilty in violation of the Double Jeopardy Clause. Although Honken acknowledges that the Eighth Circuit Court of Appeals has affirmed convictions for both CCE murder and continuing criminal enterprise *in a single prosecution,* over double-jeopardy objections, he argues that the protections of the Double Jeopardy Clause are more stringent in the case of *successive prosecutions.*

### 2. The government's response

Not surprisingly, the government contends that Honken's prior conviction on a drug conspiracy charge *does not* bar, on double-jeopardy grounds, the present prosecution for conspiracy murder and CCE murder. The government contends that the "same elements" test at the core of Honken's argument is a test of statutory construction, but that test is not controlling when there is a clear indication of contrary legislative intent. Rather, the government's argument continues, where Congress has authorized cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under the "same elements" test, a defendant may be prosecuted successively under both statutes. In this case, the government points out that the statute defining CCE murder and conspiracy murder, 21 U.S.C. § 848(e)(1), specifically states, "*In addition to* the other penalties set forth in this section ... any person engaging in or in furtherance of a continuing criminal enterprise, or any section punishable under 841(b)(1)(A) of this title ... who intentionally kills ... an individual" may be subjected to additional penalties, including life imprisonment or death. *See* 21 U.S.C. § 848(e)(1) (emphasis added). Thus, the government argues, Congress has explicitly authorized prosecution and punishment of a defendant for both CCE murder or conspiracy murder and the predicate drug conspiracy, and Honken's prior conviction under 21 U.S.C. § 846 thus stands as no bar to the present prosecution on Counts 8 through 17.

Second, the government disputes Honken's contention that the Double Jeopardy Clause somehow provides greater protection against *successive prosecutions* than it does against a single prosecution for multiple offenses, which raises *successive punishment* issues. To the contrary, the government asserts that the Supreme Court has made clear that the Double Jeopardy Clause prevents both successive punishment and successive prosecutions, according to the same standards. Moreover, the Supreme Court has observed that the Double Jeopardy Clause may bar a later prosecution for a separate offense where the government has *lost* an earlier prosecution involving the same facts, but does not require the government to bring the two prosecutions together, or bar a later prosecution where the government has *won* the earlier one.

Finally, the government contends that the prior conspiracy conviction in this case is not for the "same" conspiracy underlying the present conspiracy murder and CCE murder charges. Rather, applying the same five-factor test upon which Honken relies, the government contends that the conspiracy underlying the present charges lasted longer, involved more people, and involved additional conduct, even if it involved some of the same conduct, objectives, and people, and overlapped the previously charged conspiracy in time. Because the earlier and later charges do not involve the "same" conspiracy, the government contends, there can be no double-jeopardy issue.

## II. LEGAL ANALYSIS

### A. Constitutional Prohibition On Double Jeopardy

#### 1. General principles

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *United States v. Lara,* 324 F.3d 635, 637 (8th Cir.2003) (quoting the Fifth Amendment). Thus, "[t]he Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." *Ore-*

*gon v. Kennedy,* 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (footnote omitted); *United States v. Curry,* 328 F.3d 970, 972 (8th Cir.2003) (quoting *Kennedy* ). What is more, the Double Jeopardy Clause "protects a defendant from 'both successive prosecutions and multiple punishments for the same criminal offense.' " *United States v. Kehoe,* 310 F.3d 579, 587 (8th Cir.2002) (quoting *United States v. Bennett,* 44 F.3d 1364, 1368 (8th Cir.1995), in turn citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)), *cert. denied,* —— U.S. ——, 123 S.Ct. 2112, 155 L.Ed.2d 1089 (2003); *and compare United States v. Rea,* 300 F.3d 952, 956 (8th Cir.2002) ("The Fifth Amendment guarantee against double jeopardy consists of three constitutional protections. 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (footnotes omitted), *overruled in part by Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)."). If a district court denies a defendant's motion to dismiss on double-jeopardy grounds, the Courts of Appeals will review denial of the motion *de novo. Lara,* 324 F.3d at 637; *Rea,* 300 F.3d at 956.

### 2. *Single prosecution for multiple offenses*

■ In the context of a single prosecution for multiple offenses, the Eighth Circuit Court of Appeals has explained that,

> To show a violation of the Double Jeopardy Clause, a defendant must prove that the offenses for which he is prosecuted and punished are the same offense in both law and fact. [*Bennett,* 44 F.3d at 1368] (citation omitted). Offenses are not considered the "same," if "each of

the offenses ... requires proof of a different element." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Dixon,* 509 U.S. 688, 696–97, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). ·

*Kehoe,* 310 F.3d at 587. Thus, the initial focus of analysis for a double-jeopardy challenge in this context is whether the multiple offenses are really the "same" offense.

■ However, when a defendant is prosecuted for multiple offenses in a single prosecution, the protection of the Double Jeopardy Clause that is at issue is protection against "multiple punishments." This is so, because in the context of a single prosecution for multiple offenses, "the Double Jeopardy Clause does no more than prevent a sentencing court from prescribing greater punishment than a legislature intended." *United States v. Allen,* 247 F.3d 741, 767 (8th Cir.2001) (citing *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)), *cert. granted, judgment vacated, and remanded for reconsideration on other grounds,* 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002). Consequently, "imposition of multiple punishments for the same underlying circumstances does not violate the Constitution as long as Congress intended it." *Id.* (citing *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)). To put it another way, " 'the Double Jeopardy Clause' does not prohibit the government from proving violations of two criminal statutes with the same course of conduct if Congress clearly intended to subject defendants to such 'double punishment.' " *United States v. Jones,* 34 F.3d 596, 601 (8th Cir.1994) (quoting *United States v. Simpson,* 979 F.2d 1282, 1285 (8th Cir.1992), *cert. denied,* 507 U.S. 943, 113 S.Ct. 1345, 122 L.Ed.2d 727 (1993), in turn citing *Hunter,* 459 U.S. at 367, 103

S.Ct. 673, and *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978)), *cert. denied,* 514 U.S. 1067, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995).

### 3. Successive prosecutions

█ Honken's situation, however, does not involve a single prosecution for multiple offenses, but *successive prosecutions* for what Honken contends are the "same"

**2.** The Double Jeopardy Clause's bar on "successive prosecutions" must be distinguished from a bar on "successive trials." As the Eighth Circuit Court of Appeals has explained,

> Although the Double Jeopardy Clause bars successive prosecutions, it "is not an absolute bar to successive trials." *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 308, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984). The constitutional prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside because of trial error in the proceedings leading to conviction. *Lockhart v. Nelson,* 488 U.S. 33, 38, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *United States v. Ball,* 163 U.S. 662, 671–72, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

*Rea,* 300 F.3d at 956. The Eighth Circuit Court of Appeals has also recognized a further limitation on the scope of double-jeopardy protection from successive prosecutions where "dual sovereignty" is at issue:

> The right to be free from multiple prosecutions is limited by the dual sovereignty doctrine, which permits an independent sovereign to prosecute an individual who has been prosecuted by another sovereign for the same act. One who violates the laws of two independent sovereigns commits an offense against each, and thus a second prosecution is not for "the same offence." *Heath v. Alabama,* 474 U.S. 82, 88, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985).

*Lara,* 324 F.3d at 637. However, neither the difference between "successive prosecutions" and "successive trials," nor the question of successive prosecutions by different sovereigns is at issue here.

The Double Jeopardy Clause also has a "collateral estoppel" effect in successive prosecutions:

offense, prosecution for conspiracy murder and CCE murder *after* he has been convicted of a drug conspiracy. Thus, what is at issue here is the protection of the Double Jeopardy Clause against "a second prosecution for the same offense after conviction." *See Rea,* 300 F.3d at 956 (identifying three protections of the Double Jeopardy Clause, including this one, citing *Pearce,* 395 U.S. at 717, 89 S.Ct. 2072).[2]

> The protections afforded an accused by the Double Jeopardy Clause include the basic principle of collateral estoppel: "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). In a criminal case, a fact previously determined "is not an 'ultimate fact' unless it was necessarily determined by the [factfinder] against the government and, in the second prosecution, that same fact is required to be proved beyond a reasonable doubt in order to convict." *Prince v. Lockhart,* 971 F.2d 118, 123 (8th Cir.1992), *cert. denied,* 507 U.S. 964, 113 S.Ct. 1394, 122 L.Ed.2d 768 (1993).
>
> Our decision in *United States v. Brown,* 547 F.2d 438 (8th Cir.), *cert. denied,* 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784 (1977), illustrates this principle. Brown was tried and acquitted of committing perjury before a grand jury investigating a bank robbery. He was then tried for conspiring to commit the robbery. Because the only evidence implicating Brown in the conspiracy was factually inconsistent with Brown's acquittal in the perjury trial, we reversed the conspiracy conviction: "Clearly, that same issue of fact had been before the jury in the perjury case and must necessarily have been resolved by the jury in favor of Brown. He therefore could not be required to 'run the gantlet a second time.' " 547 F.2d at 443 (quoting *Ashe,* 397 U.S. at 446, 90 S.Ct. at 1195).

*Nesbitt v. Hopkins,* 86 F.3d 118, 120 (8th Cir.1996). However, Honken is not asserting the protection of the Double Jeopardy Clause in the sense of "collateral estoppel," because he is not relying on any "ultimate fact" deter-

### a. Termination of prior jeopardy

■ Although the Double Jeopardy Clause does not bar retrial where jeopardy has never "terminated," it "does bar ... successive prosecutions for the same offense following an unreversed conviction or a judgment of acquittal, whether express or implied." *Id.* at 957 (citing *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 308–09, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984)). This is so, because "[t]hese events are said to terminate the original jeopardy, thereby precluding the initiation of a second or double jeopardy." *Id.* (citing *Richardson v. United States,* 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), which states, "[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event ... which terminates the original jeopardy."). Honken's prior jeopardy, on the drug conspiracy charge, has "terminated" as the result of his unreversed conviction. *Id.* Thus, the question of whether the present prosecution for conspiracy murder and CCE murder involves the "same" offense in violation of the Double Jeopardy Clause is properly at issue.

### b. Double jeopardy and "lesser-included offenses"

■ As to the precise contention Honken raises—that he has already been convicted of a "lesser-included offense," and thus cannot be prosecuted for "greater offenses"—the Eighth Circuit Court of Appeals has explained,

> "[T]he Double Jeopardy Clause prohibits prosecution of a defendant for a greater offense when he has already been tried and acquitted or convicted on the lesser included offense." *[Ohio v. Johnson,* 467 U.S. 493,] 501, 104 S.Ct. [2536,] 2542, 81 L.Ed.2d 425 [ (1984) ]. Where, as here, "successive prosecutions are at stake, the [Double Jeopardy

Clause] serves a 'constitutional policy of finality for the defendant's benefit.' " *Brown v. Ohio,* 432 U.S. at 165, 97 S.Ct. at 2225 (quoting *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (plurality opinion)). More specifically, "the bar to retrial following acquittal or conviction ensures that the State does not make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence." *Ohio v. Johnson,* 467 U.S. at 498–99, 104 S.Ct. at 2540.

*Bally v. Kemna,* 65 F.3d 104, 106 (8th Cir.1995), *cert. denied,* 516 U.S. 1118, 116 S.Ct. 923, 133 L.Ed.2d 852 (1996).

### c. The applicable analysis

**i. The "same analysis."** Under Eighth Circuit precedent, "[t]he same analysis applies whether the double jeopardy issue arises as a result of multiple punishments or as a result of successive prosecutions." *United States v. Christner,* 66 F.3d 922, 928 n. 6 (8th Cir.1995) (citing *Bennett,* 44 F.3d at 1372). Similarly, in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the Supreme Court observed,

> We have often noted that the [Double Jeopardy] Clause serves the function of preventing both successive punishment and successive prosecution, see, *e.g., North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072 (1969), but there is *no* authority, except *Grady [v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) ], for the proposition that it has different meanings in the two contexts. That is perhaps because it is embarrassing to assert that the single term "same offence" (the words of the

mined *against* the government in his prior

prosecution on the drug conspiracy charge.

Fifth Amendment at issue here) has two different meanings—that what *is* the same offense is yet *not* the same offense. *Dixon,* 509 U.S. at 704, 113 S.Ct. 2849 (emphasis in the original) (also expressly overruling *Grady* ). Thus, as with "successive punishments," when the issue is "successive prosecutions," "both tests from *Blockburger* "—"the statutory intent test," which asks whether Congress intended each violation to be a separate offense," and "the same offense test," which asks whether each provision requires proof of a fact that the other does not—"had to be satisfied in order for the successive prosecutions to pass constitutional muster." *Christner,* 66 F.3d at 928.

■ *ii. Specific authorization of cumulative punishment.* However, it also follows from the application of "the same analysis" for both successive prosecutions and multiple punishments that, in both contexts, the questions are not just whether Congress intended that each violation be a *separate offense,* and whether they are "the same offense" under the *Blockburger* "elements" test, but also whether Congress intended *multiple—that is, cumulative—punishments* for those offenses, *even if the earlier and later charges constitute the "same" offense under Blockburger,* with the consequence that if Congress *did* intend multiple punishments, the Double Jeopardy Clause is not violated. *See Allen,* 247 F.3d at 767; *Jones,* 34 F.3d at 601. As the Eighth Circuit Court of Appeals explained, in the context of prosecution of multiple offenses in a single trial—the context in which "multiple punishment" may offend double-jeopardy principles—the "ultimately dispositive question" is "whether Congress clearly intended to impose cumulative sentences for simultaneous violations of each of the statutes." *Allen,* 247 F.3d at 768 (citing *Hunter,* 459 U.S. at 368, 103 S.Ct. 673, as "reasoning that simply because two criminal statutes may proscribe the same conduct under the

*Blockburger* test does not mean double jeopardy precludes cumulative punishment because courts cannot negate clearly expressed legislative intent"). It follows that, for "the same offence" to mean the same thing for both "multiple punishments" and "multiple prosecutions," *see Dixon,* 509 U.S. at 704, 113 S.Ct. 2849, the same question must be "ultimately dispositive" in both contexts.

■ Similarly, in *Hunter,* the Supreme Court held,

Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes *in a single trial.*

459 U.S. at 368–69, 103 S.Ct. 673 (emphasis added). The dissenters in *Hunter,* Justices Marshall and Stevens, argued that "[h]ad respondent been tried for these two crimes in separate trials, he would plainly have been subjected to multiple prosecutions for 'the same offence' in violation of the Double Jeopardy Clause," and that the majority's holding meant that the phrase "the same offence" meant different things in the context of multiple prosecutions and multiple punishments. *See Hunter,* 459 U.S. at 369, 103 S.Ct. 673 (Marshall, J., dissenting, joined by Stevens). However, their arguments did not prevail. The conundrum pointed out by the dissenters in *Hunter,* this court concludes, disappears—that is, the phrase "the same offence" *does* mean the same thing in the two contexts—if the "specific authorization of cumulative punishment" exception to application of the *Blockburger* "same elements" test applies in *both* contexts, to successive prose-

cutions as well as to successive punishments.

The Eighth Circuit Court of Appeals has "repeatedly held that multiple prosecutions and cumulative sentences for bank robbery under § 2113 and for using a firearm pursuant to § 924(c) are clearly intended by Congress and thus permissible." *See Allen,* 247 F.3d at 768 (citing as an exemplar *United States v. McQuiston,* 998 F.2d 627, 629 (8th Cir.1993)). The key in such cases was that "[s]ection 924(c) explicitly states that its punishment is to be imposed 'in addition to the punishment provided for such crime of violence.'" *Id.* (citing 18 U.S.C. § 924(c)(1) (1994)); *see also Jones,* 34 F.3d at 601–02 (focusing on the same language as expressing Congress's intent that multiple punishment be imposed and multiple prosecutions permitted). The Eighth Circuit Court of Appeals has adhered to these prior holdings that cumulative punishment was permissible for violations of § 2113 and § 924(j) notwithstanding "the likely failure of the two statutes to pass the *Blockburger* [same elements] test," because the court found that "Congress fully and clearly intended to permit cumulative punishments for violations of § 2113 and 924(j)." *Id.* at 769; *and compare Bennett,* 44 F.3d at 1375 (concluding that successive prosecutions for drug conspiracies and RICO offenses did not violate the Double Jeopardy Clause, because the offenses were not the "same" under *Blockburger* ).

More importantly, the Supreme Court itself has recognized that "the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Garrett v. United States,* 471 U.S. 773, 779, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985) (citing *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); and *Whalen v. United States,* 445 U.S. 684,

691–692, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)). In the context of a double-jeopardy challenge to prosecution for a CCE offense after prior conviction of predicate drug offenses, the Supreme Court observed

[I]t would be illogical for Congress to intend that a choice be made between the predicate offenses and the CCE offense in pursuing major drug dealers. While in the instant case Garrett claims that the Government was aware of the possibility of bringing the CCE charge before he was indicted on the Washington offenses, in many cases the Government would catch a drug dealer for one offense before it was aware of or had the evidence to make a case for other drug offenses he had committed or in the future would commit. The Government would then be forced to choose between prosecuting the dealer on the offense of which it could prove him guilty or releasing him with the idea that he would continue his drug-dealing activities so that the Government might catch him twice more and then be able to prosecute him on the CCE offense. Such a situation is absurd and clearly not what Congress intended.

*Garrett,* 471 U.S. at 785–86, 105 S.Ct. 2407.

■■ Notwithstanding the "absurdity" it had identified, the Court in *Garrett* nevertheless also considered whether a predicate offense and a CCE offense constituted the "same offense" within the meaning of the Double Jeopardy Clause. *Id.* at 786, 105 S.Ct. 2407. The Court concluded that, "[q]uite obviously the CCE offense is not, in any commonsense or literal meaning of the term, the 'same' offense as one of the predicate offenses," because "[t]he CCE offense requires the jury to find that the defendant committed a predicate offense, and in addition that the predicate offense was part of a continuing series of predicate

offenses undertaken by the defendant in concert with five or more persons, that the defendant occupied the position of an organizer or manager, and that the defendant obtained substantial income or resources from the continuing series of violations." *Id.* at 786, 105 S.Ct. 2407. The Court also found that "there is a good deal of difference between the classic relation of the 'lesser included offense' to the greater offense presented in *Brown [v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (misdemeanor joyriding and felony auto theft),] on the one hand, and the relationship between the Washington marihuana offense and the CCE charge involved in this case, on the other." *Id.* at 787, 105 S.Ct. 2407. Thus, while the Court expressly considered whether the greater offense required proof of elements that the predicate offense did not, the Court did not consider whether the predicate offense also required proof of an element that the greater offense did not, which is also a requirement of *Blockburger* for the two offenses to be "separate" offenses. Thus, at a minimum, *Garrett* suggests that a classic *Blockburger* "same elements" test is not a realistic determinate of whether offenses are the "same" offense for double-jeopardy purposes, where the greater offense involves more than a "single course of conduct," and Congress has expressly authorized cumulative punishment of the predicate offense and the greater offense. *Id.* at 787–90, 105 S.Ct. 2407.

### B. Double Jeopardy In Honken's Cases

#### 1. Authorization of cumulative punishment

■ The court begins its application of double-jeopardy principles in this case with the government's contention that this is a case in which it is unnecessary to perform a *Blockburger* "same elements" analysis, because even if the prior and present charges against Honken are the "same" under the *Blockburger* test, Congress has nevertheless expressly authorized multiple or cumulative punishments, so that there is no double-jeopardy violation. As explained above, this court concludes that application of the "same analysis" to Honken's successive prosecution claim as would be applicable to a multiple punishments claim—that is, a claim arising from a single prosecution of multiple charges—means that there is no double-jeopardy violation if Congress intended multiple, or cumulative, punishments for the offenses in question, even if the earlier and later charges constitute the "same" offense under *Blockburger. Cf. Garrett,* 471 U.S. at 779, 105 S.Ct. 2407; *Hunter,* 459 U.S. at 368–69, 103 S.Ct. 673; *Allen,* 247 F.3d at 767; *Jones,* 34 F.3d at 601.

The analysis here of the drug conspiracy charge, on the one hand, and the conspiracy murder and CCE murder charges, on the other, is, consequently, guided by the analysis of the Eighth Circuit Court of Appeals in *Allen. See Allen,* 247 F.3d at 767–70. In *Allen,* the court noted that § 924(c), which imposed certain penalties for carrying or using a firearm during a crime of violence, "explicitly states that its punishment is to be imposed 'in addition to the punishment provided for such crime of violence.'" *Id.* at 768 (quoting the statute). The court concluded that "[t]his language leaves no doubt that Congress intended to impose multiple, cumulative punishments under § 924(c)." *Id.* at 769.

■ Similarly, here, as the government points out, § 848(e)(1) provides that, *"[i]n addition to the other penalties set forth in this section—*(A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title … who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing

of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death." 21 U.S.C. § 848(e)(1)(A) (emphasis added). As in *Allen,* the "in addition to" language "leaves no doubt that Congress intended to impose multiple, cumulative punishments under" § 848(e)(1), *at least for violations of § 848. Allen,* 247 F.3d at 769. The difference between the statute here and the statute in *Allen* is that the "in addition to" language here does not expressly modify penalties for *all* underlying or predicate crimes, but only "penalties set forth in this section." *See* 21 U.S.C. § 848(e)(1), *and compare Allen,* 247 F.3d at 768 (§ 924(c)(1) states that its punishment is to be imposed "in addition to the punishment provided for such crime of violence"). It is clear, therefore, that Congress intended to impose cumulative punishment for a CCE offense, as defined and punished elsewhere in § 848, and murder, if the perpetrator committed a murder while engaging in or working in furtherance of that CCE. *Id.*

■■■ However, it is somewhat less clear whether Congress also intended to impose cumulative punishment for murder while engaging in or in furtherance of "an offense punishable under section 841(b)(1)(A)," such as a drug conspiracy, where drug conspiracy in violation of 21 U.S.C. § 846 is punishable under 21 U.S.C. § 841(b)(1)(A). However, hypertechnical concern with the "in this section" limitation on the "in addition to" clause aside, it is otherwise clear from the language of subparagraph (A) of § 848(e)(1) that Congress also intended to impose a separately defined and cumulative penalty—a 20–year mandatory minimum sentence, life sentence, or death sentence—for murder while engaging in or working in further-

ance of "an offense punishable under section 841(b)(1)(A)," on top of the penalty provided in § 841(b)(1)(A). It would be absurd to read the language of the statute as authorizing cumulative punishment for CCE murder, in relation to a CCE predicate offense under § 848, but not to authorize cumulative punishment for conspiracy murder, also defined in § 848(e)(1)(A), in relation to a drug conspiracy predicate offense defined by § 846 and "punishable under section 841(b)(1)(A)." *See, e.g., United States v. Collazo–Aponte,* 216 F.3d 163, 200 (1st Cir.2000) (reading the statute as "making it clear that Congress intended to permit a defendant to be convicted and sentenced separately for murder under 848(e)(1) and a predicate drug conspiracy punishable under 21 U.S.C. § 841(b)(1)(A)," and noting that "[t]he case law is in accord and we need not give this argument any further consideration") (citing in support *United States v. McCullah,* 76 F.3d 1087, 1104–05 (10th Cir.1996), *cert. denied,* 520 U.S. 1213, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997); *United States v. Snow,* 48 F.3d 198, 200 (6th Cir.1995); *United States v. Villarreal,* 963 F.2d 725, 728 (5th Cir.1992), *cert. denied,* 506 U.S. 927, 113 S.Ct. 353, 121 L.Ed.2d 267 (1992); and *United States v. NJB,* 104 F.3d 630, 632–33 (4th Cir.1997)), *cert. granted and judgment vacated on other grounds,* 532 U.S. 1036, 121 S.Ct. 1996, 149 L.Ed.2d 1000 (2001) (vacating the judgment for reconsideration in light of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).[3]

Thus, the court concludes that Honken's double-jeopardy challenge fails, because Congress has expressly authorized cumulative punishment, and hence successive prosecutions, for a drug conspiracy offense and conspiracy murder or CCE murder.

---

**3.** The court will discuss more fully below why it concludes that Congress intended that

§ 848(e)(1) define a separate offense from drug conspiracy in violation of § 846.

Nevertheless, and in the alternative, the court will perform a *Blockburger* analysis to determine whether or not there is a double-jeopardy violation under the analysis of successive prosecutions set forth by the Eighth Circuit Court of Appeals in *Christner*, which relied exclusively on a "*Blockburger* analysis." *See Christner*, 66 F.3d at 928 ("[B]oth tests from *Blockburger*"—"the statutory intent test," which asks whether Congress intended each violation to be a "separate offense," and "the same offense test," which asks whether each provision requires proof of a fact that the other does not—"had to be satisfied in order for the successive prosecutions to pass constitutional muster."). Also in the alternative, the court will consider whether the offenses in question are "separate offenses" under the analysis set forth by the Supreme Court in *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985).

### 2. Intent to define separate offenses

■ As to the first step in the analysis, determination of whether Congress intended each violation to be a separate offense, *Christner*, 66 F.3d at 928, there can be little doubt that Congress intended to define both conspiracy murder and CCE murder, in violation of 21 U.S.C. § 848(e)(1)(A), as separate from any underlying drug conspiracy offense in violation of 21 U.S.C. § 846. Indeed, it does not appear to the court that Honken has ever argued to the contrary, because his arguments instead focus on the "same elements" portion of the *Blockburger* analysis. Moreover, review of the statutory language of § 848(e)(1)(A) can lead to no other conclusion. In that statute, it is clear that Congress intended to define separate murder offenses, for at least two reasons. First, Congress separately prohibited and separately penalized (with its own range of punishments) murder in furtherance of a conspiracy or CCE—even

though the "conspiracy murder" offense was defined in terms of murder while engaging in or in furtherance of "an offense punishable under section 841(b)(1)(A)," such as a § 846 conspiracy. Second, and, just as importantly, as defined by Congress, the gravamen of the § 848(e)(1)(A) offense is the *murder*, not the *drug conspiracy*. Thus, applying the first test from *Blockburger*, via *Christner*, it is clear that Congress intended to define conspiracy murder and CCE murder as separate offenses from an underlying drug conspiracy offense.

### 3. The same or separate offenses

The next part of the analysis considers whether the offenses are the "same offense." *See Christner*, 66 F.3d at 928. Under the "*Blockburger* analysis" of this issue outlined in *Christner*, the question was whether the offenses have the "same elements"; thus, only where each provision requires proof of a fact that the other does not is successive prosecution of the two offenses permissible under the Double Jeopardy Clause. *See id.* (citing *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180, for this formulation of the "same elements" test for double-jeopardy purposes). As explained above, however, when the Supreme Court performed a "same elements" analysis in *Garrett*, it formulated the inquiry somewhat differently. Therefore, the court will consider the elements of each of the § 848(e)(1) offenses charged here, in turn, to determine whether those offenses have the "same elements" as the drug conspiracy of which Honken has already been convicted, first under a classic "*Blockburger* analysis," then under a "*Garrett* analysis."

### a. Conspiracy murder

Counts 8 through 12 of the Superseding Indictment in this case charge what this

court has described as "conspiracy murder." More specifically, these Counts charge that Honken murdered certain individuals "while knowingly engaging in an offense punishable under Title 21, United States Code, Sections 846 and 841(b)(1)(A)," which offense is specifically described as conspiracy to manufacture and distribute methamphetamine. Superseding Indictment, Counts 8 through 12. Although the statute defines the offense in terms of either murder while "engaging in" the drug conspiracy, or murder while "working in furtherance of" the drug conspiracy, *see* 21 U.S.C. § 848(e)(1)(A), the "conspiracy murder" charges in the Superseding Indictment in this case charge *only* the "engaging in" alternative. *See* Superseding Indictment, Counts 8 through 12.

The selection of the alternative to charge in this case is not without significance, as this court explained in a companion case, *United States v. Johnson*, 225 F.Supp.2d 1009 (N.D.Iowa 2002):

> The court in *[United States v.] Ray*, [238 F.3d 828, 832 (7th Cir.), *cert. denied*, 532 U.S. 1045, 121 S.Ct. 2014, 149 L.Ed.2d 1015 (2001),] determined that a person could be guilty of "CCE murder" if the government established that the defendant was "working in furtherance of" the CCE, which reached "hired henchmen," not just "kingpins"; the government did not have to prove that the defendant was both "engaged in" and "working in furtherance of" the CCE. *See [Ray*, 238 F.3d] at 832–33. Thus, *Ray* in part distinguishes the scope of the "engaged in" language— which might reach only defendants who were actually guilty of the CCE offense—from the "working in furtherance of" language—which reached persons who would not be guilty of the underlying CCE offense. *Id.* (explaining that, otherwise, the "working in furtherance

of" language would be superfluous of the "engaging in" language).

> In Johnson's case, however, in Counts 1 through 5 of the second indictment, the government has charged only the "engaging in" alternative. *See* Indictment in Case No. CR 01–3046–MWB, Counts 1–5. Therefore, the government *must* prove that Johnson "engaged in," *i.e.*, was guilty of, the "conspiracy" as an element of proof on the charges of "murder while engaging in a drug conspiracy." *[United States v.] Walker*, 142 F.3d [103,] 112 [(2d Cir.)] (stating the elements of "murder while engaging in a drug conspiracy" as including proof that the defendant was guilty of the conspiracy), [*cert. denied*, 525 U.S. 896, 119 S.Ct. 219, 220, 142 L.Ed.2d 181 (1998)]; *see Ray*, 238 F.3d at 832–33 (distinguishing the scope of "engaging in" from the scope of "working in furtherance of" the underlying offense).

*Johnson*, 225 F.Supp.2d at 1018 (emphasis in the original).

■ ***i. Analysis under Blockburger.***
In the companion case of *United States v. Johnson*, this court noted that "[t]he Circuit Courts of Appeals to consider the question apparently all agree that 'murder while engaged in a drug conspiracy' under § 848(e)(1)(A) is a separate offense from 'drug conspiracy' under § 846, and that a person can be punished for both the murder and the drug conspiracy." *Johnson*, 225 F.Supp.2d at 1016–17 (citing *Collazo-Aponte*, 216 F.3d at 199–200 (citing cases)). Nevertheless, the court will proceed here with its own application of the "same elements" analysis as to these two offenses.

In *Johnson*, this court also noted that, " '[t]o convict a defendant of [a drug] conspiracy, the government must prove beyond a reasonable doubt the following elements: (1) there was a conspiracy with an illegal purpose, (2) the defendant knew

about the conspiracy, and (3) the defendant knowingly became part of it.'" *Id.* at 1018 (quoting *United States v. White,* 241 F.3d 1015, 1022 (8th Cir.2001), and citing *United States v. Cordova,* 157 F.3d 587, 592 (8th Cir.1998)). This court also stated the elements of "murder while engaging in a drug conspiracy" in violation of § 848(e)(1)(A), as follows: " '(1) that [the defendant] was guilty of the narcotics conspiracy as [described in the indictment]; (2) the drug conspiracy involved at least [the quantity of the controlled substance triggering punishment under 21 U.S.C. § 841(b)(1)(A)]; (3) while engaging in the drug conspiracy involving the specified quantity of drugs, [the defendant] either intentionally killed or counseled, demanded, induced, procured, or caused the intentional killing [the identified victim]; and (4) that the killing of [the victim] actually resulted from [the defendant's] actions.'" *Id.* at 1017 (quoting *United States v. Walker,* 142 F.3d 103, 112 (2d Cir.), *cert. denied,* 525 U.S. 896, 119 S.Ct. 219, 220, 142 L.Ed.2d 181 (1998)). In light of the elements of "murder while engaging in a drug conspiracy," this court concluded in *Johnson* that "the essential elements of a drug conspiracy are necessarily essential elements of 'murder while engaging in a drug conspiracy' by virtue of the first element of the charged offense." *Id.* Consequently, in this case as in *Johnson,* "the government *must* prove that [Honken] 'engaged in,' *i.e.,* was guilty of, the 'conspiracy' as an element of proof on the charges of 'murder while engaging in a drug conspiracy.'" *Id.* at 1018 (emphasis in the original).

This finding has clear implications for the application of the *Blockburger* "same elements" test in this case. As the elements of the offenses above indicate, there are numerous elements of "murder while engaging in a drug conspiracy" that do not have to be proved to establish a drug conspiracy. On the other hand, the drug conspiracy, which is incorporated in its

entirety into the offense of "murder while engaging in a drug conspiracy," is a "lesser-included offense" of conspiracy murder, in that it *does not* require proof of a fact that "murder while engaging in a drug conspiracy" does not *also* require. *See Christner,* 66 F.3d at 928 (considering whether each offense requires proof of elements that the other does not). It follows from this relationship between the elements of the two offenses that, if this court is incorrect in its conclusion that Congress's express authorization of cumulative punishment makes the *Blockburger* "same elements" test irrelevant in the context of successive prosecutions, there *may be* a double-jeopardy violation if Honken is prosecuted for conspiracy murder after his conviction for an underlying drug conspiracy, *but only if the two conspiracies involved in the offenses are the same.*

The government contends that the conspiracy of which Honken has previously been convicted is *not* the same conspiracy charged as an element of the present "conspiracy murder" charges, but Honken argues that it is. To resolve this issue, the court must first compare the identifications of the conspiracy at issue in the prior and present indictments. Honken previously pleaded guilty to a conspiracy charged as a conspiracy "[b]etween about 1993 and February 7, 1996," to distribute, manufacture, and attempt to manufacture 1,000 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 100 grams or more of pure methamphetamine. Indictment in Case No. CR 96–3004–MWB (N.D.Iowa), Count 1. The Superseding Indictment in this case identifies a facially similar conspiracy underlying the conspiracy murder charge, because it alleges a conspiracy "between 1992 and 1998" to manufacture and distribute 1,000 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 100

grams or more of pure methamphetamine. Superseding Indictment, Counts 8 through 12. Thus, the court must decide whether, in light of this facial similarity in the definitions of the two conspiracies and other indicia, the two conspiracies are the "same."

 The parties are correct that, in this Circuit, the court must apply a "totality of the circumstances" analysis to determine whether two alleged conspiracies are in reality the same conspiracy. *United States v. Petty*, 62 F.3d 265, 267 (8th Cir. 1995) (citing *United States v. Thomas*, 759 F.2d 659, 662 (8th Cir.1985), and *United States v. Tercero*, 580 F.2d 312, 315 (8th Cir.1978)). "Under this test, the court considers the following five factors: (1) the time the conspiracies existed; (2) the identity of the conspirators involved; (3) the statutory offenses charged in the indictment; (4) the nature and scope of the activity charged; and (5) the location where the events alleged as part of the conspiracy took place." *Id.* (citing *Thomas*, 759 F.2d at 662, and also citing *United States v. Ledon*, 49 F.3d 457, 460 (8th Cir.1995); *United States v. Okolie*, 3 F.3d 287, 290 (8th Cir.1993), *cert. denied*, 510 U.S. 1170, 114 S.Ct. 1203, 127 L.Ed.2d 551 (1994); and *United States v. Standefer*, 948 F.2d 426, 431 (8th Cir.1991)).

 In this case, the two indictments identify precisely the same statutory offenses as objectives of the conspiracies, the distribution and manufacture of pure methamphetamine and a mixture or substance containing a detectable amount of methamphetamine, and even the same quantities of these controlled substances. *Id.* (third factor). However, the conspiracy underlying the conspiracy murder charges is expanded in time, both earlier and later than the conspiracy with which Honken was charged in 1996. *Id.* (first factor). Indeed, the conspiracy underlying the present charges involves a period of time that only prescience would have allowed the government to charge in 1996. Moreover, to the extent that the specifics alleged in the CCE murder charges provide insight, the conspiracy underlying the conspiracy murder charges in the present indictment involves both more, and at some point, different conspirators, *id.* (factor two), and a considerably expanded scope of activity, *id.* (factor four), and possibly expanded location of events. *Id.* (fifth factor). Thus, at a minimum, the conspiracy underlying the present charges is "bigger" and lasted longer. While the extent of overlap is troubling to the court, the court nevertheless concludes that "different" conspiracies are involved, and the present charges, therefore, are not for the "same" offense to which Honken has already pleaded guilty, even under a *Blockburger* analysis.

 *ii. Analysis under Garrett.* Also in the alternative, the court concludes that the analysis of the "same offense" issue in *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), suggests—indeed, this court finds, dictates—the conclusion that the present conspiracy murder charges are not the "same" offense as the conspiracy to which Honken pleaded guilty. Despite the fact that the drug conspiracy underlying the former charge and the present charge *could* be the same, it is perhaps even *more* obvious here than it was in *Garrett* that conspiracy murder "is not, in any commonsense or literal meaning of the term, the 'same' offense as" a drug conspiracy. *Cf. Garrett*, 471 U.S. at 786, 105 S.Ct. 2407. As in *Garrett*, the conspiracy murder offense "requires the jury to find that the defendant committed the predicate offense [of drug conspiracy], and in addition to that predicate offense," that the defendant committed murder while engaging in the drug conspiracy, and that the killing actually

resulted. *Cf. id.* (comparing a CCE offense with a predicate offense). Thus, the "greater offense" involves proof of facts not required for the "lesser offense." This court is also persuaded that "there is a good deal of difference between the classic relation of the 'lesser-included offense' to the greater offense presented in *Brown,* on the one hand, and the relationship between the" drug conspiracy and the conspiracy murder charges. *Id.* at 787, 105 S.Ct. 2407. Plainly, what is prohibited and punished by the statute defining a drug conspiracy offense is *an agreement to commit drug-trafficking offenses,* but what is prohibited and punished by the statute defining a conspiracy murder offense *is the murder,* albeit, a murder related to the drug-trafficking conspiracy. Thus, what the conspiracy murder offense punishes is a *collateral* "course of conduct" to the conduct at issue in the drug conspiracy offense, and the "greater offense" does not involve a "single course of conduct" shared with the "lesser offense." *Cf. id.* at 787–90, 105 S.Ct. 2407. Therefore, under *Garrett,* the conspiracy murder charges do not involve the "same" offense as the drug conspiracy of which Honken has previously been convicted.

#### b. CCE murder

 As with the conspiracy murder charges, the court will first consider whether CCE murder is the "same" offense as drug conspiracy under the "same elements" test as defined in *Blockburger.* *See Christner,* 66 F.3d at 928 (citing *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180). The court will then consider, in the alternative, whether CCE murder and drug conspiracy are the "same" offense under *Garrett.* *See Garrett,* 471 U.S. at 786–90, 105 S.Ct. 2407.

 *i. Analysis under Blockburger.* In the companion case of *United States v. Johnson,* this court identified the elements of a CCE offense as follows: " '1) a felony violation of the federal narcotics laws; 2) as part of a continuing series of violations; 3) in concert with five or more persons; 4) for whom the defendant is an organizer and supervisor; and 5) from which he derives substantial income or resources.' " *Johnson,* 225 F.Supp.2d at 1019–20 (quoting *United States v. Maull,* 806 F.2d 1340, 1342 (8th Cir.1986), *cert. denied,* 480 U.S. 907, 107 S.Ct. 1352, 94 L.Ed.2d 522 (1987)). This court then explained that CCE murder had the following elements: (1) that the defendant was "engaged in or working in furtherance of" the CCE; (2) that the defendants intentionally killed the persons identified and (3) that there was a substantive connection between the killing and the CCE. *Id.* at 1020. As this court explained, only the "engaged in" alternative to the first element requires proof that the defendant was actually guilty of the underlying CCE offense. *Id.* (but noting that, in the case then before it, the government had charged only murder while "working in furtherance" of the CCE). The "working in furtherance of" alternative, on the other hand, requires proof that, at a minimum, the CCE existed, and that the defendant was "working in furtherance of" that CCE, but the government *does not* have to prove that the defendant was the person engaged in the CCE. *Id.* In other words, for this alternative, the person engaged in the CCE and the person charged with committing murder in furtherance of the CCE need not be the same person. *Id.* at 1020–21.

 From this analysis, it follows that, at least as to the "working in furtherance" alternative of the CCE murder charges, these charges do not charge the "same" offense as the drug conspiracy at issue in Honken's prior conviction. As explained above, the drug conspiracy offense required proof that Honken was a member of the conspiracy, *see id.* at 1018 (proof of a drug conspiracy requires, as the third element, proof that " 'the defendant know-

ingly became part of [the conspiracy]' ") (quoting *White*, 241 F.3d at 1022, and citing *Cordova*, 157 F.3d at 592), but the "working in furtherance" alternative of the CCE murder charges does not, while the "working in furtherance" alternative of the CCE murder charges requires proof that the defendant committed murder, which the prior drug conspiracy charge plainly did not require. *Christner*, 66 F.3d at 928 (asking whether each provision requires proof of a fact that the other does not). Thus, these offenses simply are not the "same" under the *Blockburger* test, and thus, charging and trying them in successive prosecutions does not offend Honken's rights under the Double Jeopardy Clause.

 Although the "engaging in" alternative to the CCE murder charges requires proof that the defendant was actually guilty of the underlying CCE offense, *see Johnson*, 225 F.Supp.2d at 1020, it does not necessarily follow that CCE murder and an underlying drug conspiracy are the "same" offense under a *Blockburger* "same elements" test. Nor does the Supreme Court's holding that a drug conspiracy is a lesser-included offense of a CCE offense, *see Rutledge v. United States*, 517 U.S. 292, 299, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), necessarily require such a holding, *unless the conspiracy underlying the CCE is the same conspiracy underlying the drug conspiracy charge.* Here, the CCE murder counts specifically identify a predicate offense of the CCE as conspiracy "between about 1992 and 2000" to "manufacture, possess with intent to distribute, and distribute 100 grams or more of pure methamphetamine and 1000 grams or more of a mixture or substance containing a detectable amount of methamphetamine." Superseding Indictment, Counts 13 through 17, numbered subparagraph 3. For essentially the reasons stated above, in reference to a comparison of the conspiracy at issue in the conspiracy murder charges with Honken's prior drug conspir-

acy conviction, under the five-factor totality of the circumstances test, *see Petty*, 62 F.3d at 267 (stating the pertinent factors of the "totality of the circumstances" test), these charges do not involve the "same conspiracy" as Honken's conviction for a drug conspiracy.

Thus, the CCE murder charges, in either their "engaging in" or "working in furtherance" forms, are not the "same" offense under *Blockburger* as the drug conspiracy offense of which Honken has already been convicted, and there is no double-jeopardy violation in successive prosecution of the past and present offenses.

 **ii. Analysis under Garrett.** Furthermore, application of the *Garrett* analysis yields the same conclusion, even more plainly for CCE murder and a drug conspiracy than for conspiracy murder and a drug conspiracy. Again, "[q]uite obviously the CCE [murder] offense is not, in any commonsense or literal meaning of the term, the 'same' offense as" drug conspiracy. *Cf. Garrett*, 471 U.S. at 786, 105 S.Ct. 2407. This is so, because the CCE murder offense requires the jury to find that, in addition to a drug conspiracy, other predicate offenses were committed as part of a series undertaken by the defendant in concert with five or more persons, that some person was an organizer and manager of the CCE and obtained substantial income or resources from the continuing series of violations, *and still further*, that the defendant committed murder while engaging in or in furtherance of that CCE, and that the killing actually resulted. *Cf. id.* This is not the simple relationship of a lesser-included offense and a greater offense presented in *Brown v. Ohio*. *Id.* Again, plainly, what is prohibited and punished by the statute defining a drug conspiracy charge *is an agreement to commit drug-trafficking offenses*, but what is prohibited and punished by the statute defining a CCE

murder offense *is the murder*, albeit, a murder related to the CCE, which in turn has some relationship to a drug conspiracy. Thus, what the CCE murder offense punishes is a *collateral* "course of conduct" to the conduct at issue in the drug conspiracy offense, and the "greater offense," again, does not involve a "single course of conduct" shared with the "lesser offense." *Cf. id.* at 787–90, 105 S.Ct. 2407. Therefore, under *Garrett,* the CCE murder charges do not involve the "same" offense as the drug conspiracy of which Honken has previously been convicted. Honken's double-jeopardy challenge to the CCE murder charges also fails under a *Garrett* analysis.

### III. CONCLUSION

Upon the foregoing, the court concludes that Honken is not being "for the same offence . . . twice put in jeopardy of life or limb." U.S. CONST., amend. V, cl. 2. The drug conspiracy of which Honken has previously been convicted is not the "same offence" with which he is now charged in either Counts 8 through 12 (conspiracy murder) or 13 through 17 (CCE murder). This is true whether the court relies on the clear congressional authorization of cumulative punishment; a classic *"Blockburger* analysis" of whether the offenses involve the "same elements," where the court finds that the underlying conspiracies are different; or a *"Garrett* analysis," whether or not the underlying conspiracies are the same.

THEREFORE, defendant Honken's June 6, 2003, Motion To Dismiss Counts 8 Through 17 On Grounds Of Former Jeopardy (docket no. 119) is **denied** in its entirety.

**IT IS SO ORDERED.**